FLORENCE COTTON OIL CO. v. ALABAMA TOWBOAT CO.

(Circuit Court of Appeals, Fifth Circuit.    April 8, 1904.)

No. 1,305.

1. ADMIRALTY—MARITIME CONTRACT—BREACH—DAMAGES.

A contract by the master of a steamboat to collect and transport certain cotton seed from one port to another within a reasonable time, for freight specified, is a maritime contract, a breach of which entitles the shipper to recover damages in admiralty.

2. SAME—LIBEL—EXCEPTIONS—PARTIES.

Where a libel in admiralty was filed against a boat and barge for breach of a maritime contract, parties other than the intervening claimant were not entitled to file exceptions thereto.

¶ 1. Admiralty jurisdiction as to matter of contract, see notes to The Richard Winslow, 18 C. C. A. 347; Boutin v. Rudd, 27 C. C. A. 530.
See Admiralty, vol. 1, Cent. Dig. §§ 156, 164, 165.

Appeal from the District Court of the United States for the Northern District of Alabama.

Pillans, Hanan & Pillans and John T. Ashcraft, for appellant.
Cooper & Foster, for appellee.

Before PARDEE, McCORMICK, and SHELBY, Circuit Judges.

PARDEE, Circuit Judge.    This was a libel filed by the appellant against the steamboat Gladys and the barge attending said steamboat, known as "Barge R5," alleging that the master of the said steamboat Gladys loaded on board the said steamboat and the barge attending said steamboat, known as "R5," certain cotton seed, which was received in good order and condition, and which, as libelant charges, he agreed to deliver in good order. and condition at a landing in Tennessee river, in the city of Florence, known as "Sweetwater Landing," unto libelant, it paying freight therefor; and libelant attached and made part of its libel a copy of certain telegrams and letters, as constituting the contract of carriage.   The libel further charges that on or about the 2d day of March, 1899, the said steamer Gladys brought to Lock 7, in the Mussel Shoals Canal, the said cotton seed, and left the same loaded upon said barge, and exposed to the. weather, and failed and refused to deliver the same unto libelant until on or about the 15th day of April, 1899, and that when so delivered on said 15th day of April the said cotton seed was not in the same order and condition as when received, but had been damaged by long exposure to the weather, the damage amounting to $620.   The libelant further averred that the steamboat and her barge were in the Tennessee river, within said district, and within the jurisdiction of the court, and it prayed for process in rem against the Gladys and the barge attending the steamboat Gladys, and their condemnation and sale to pay libelant's claim, with interest and costs, and for such further and other relief as, in law and justice, it should be entitled to receive.

The exhibits to the libel, made part of same, as constituting the contract of carriage, consist of letters and telegrams which passed between the libelant and Joseph Ringemann, Jr., manager, which letters are found on pages 3 to 5 of the record, inclusive.   From these it appears that the libelant on February 2d stated that it had seed at Lamb's Ferry and a lot more near the ferry, which it could not get ready for this trip, and other to be brought from along the canal, and offered to contract with Mr. Ringemann, whom it addressed as manager, for the transportation of this seed at a named price per ton, which letter was answered by him by telegraph and post (both telegram and letter bearing date the 4th of February) accepting the libelant's proposition, and requesting libelant to have the seed sacked and ready along the line where they could get them for transportation, declaring that "we make this request because we expect to bring down other freight and want to take enough barges to carry out all we can get,   *   *   *   and as we have good prospects for more work between here and Florence we will agree to carry the rest of your seed also.   In fact we are figuring to put a

regular boat in the trade between here and there. What do you think you can offer us in the way of business?" Next in order was a telegram from libelant on the 6th of February to Ringemann, notifying him of about 1,000 bags being at Lamb's Ferry, which they supposed to be all filled. And an answer by Ringemann on the same day notifying that the boat would start on a round trip next morning, and expressing a hope that the seed would be ready, "as we will not have as much lumber as we at first thought, in fact we may not get any and in that case less than one thousand sacks would fail to make a trip. We are very anxious to handle all the seed on this river for some one," etc. "* * * and if you cannot send some one to buy it we will be compelled to bring them this way in order to keep them from going by some other boat." In a postscript to this letter, Mr. Ringemann, who signed it as manager, asked libelant to call upon one McClure and ask him "if we can handle his corn on this trip down." The next letter is from libelant, dated 23d February, expressing surprise at the seed not being brought down as agreed, and reply from Joseph Ringemann, Jr., manager, dated 27th February, declaring that by the time the letter arrives the boat (the Gladys) will be delivering libelant's seed, and suggesting other business in Elk river. According to the libel, it was under this that the master received the seed for transport.

Process having issued upon the libel, and the steamer and barge having been seized, and notice duly given, a claim was filed, verified by Joseph Ringemann, Jr., the manager, with whom the contract of carriage had been made, alleging that the "Alabama Towboat Company, E. S. Ringemann," was the owner of the steamer Gladys and barge R5, against which the libel was filed, and thereupon, bail having been given, the vessel was released. This occurred May 10, 1899; the libel having been filed and process issued 21st April, 1899. On June 2, 1899, the Alabama Towboat Company, as claimant, filed a brief answer, verified by Joseph Ringemann, Jr., as manager of the Alabama Towboat Company, in which answer a traverse was made of all the averments of the libel, and an alternative defense that, if the libel was true, the vessel was not liable, because "at the time of the commission of said acts the said steamer and barge were in the possession and control of the Rodman & Ringemann Company, who held the same under lease from claimant." To so much of this answer as sought thus to confess and avoid, exceptions were filed on 23d of March, 1900, but these were never acted upon by the court.

A great mass of testimony was taken by affidavit and deposition, which will be found extending from page 17 to page 88 of the record, and an agreement for a hearing was filed, but not acted on; and then, on the 25th of April, 1902, there were filed exceptions to the libel, not in the name of the claimant, but by counsel signing for "libelee," which exceptions were in the nature of demurrers, and assigned, among others, these grounds:

"(1) That the libel does not state a cause of action coming within the admiralty jurisdiction of the court. * * * (3) That it fails to set up a contract whereby libelee agreed to carry said cargo of seed from Lamb's Ferry

to Sweetwater Landing. (4) The contract which said libel purports to set out imposes no obligation on libelee to carry said cotton seed from Lamb's Ferry to Sweetwater Landing. (5) The contract which said libel purports to set out by the correspondence annexed thereto is a different contract from that declared on in said libel. (6) That there is nothing in the contract set out in the said libel which imposes upon the libelee the duty of delivering said cotton seed in good condition."

In this state of the record, the case was heard upon the exceptions to the libel, and it was agreed that a decision thereon might be rendered in vacation; and thereafter, on June 12, 1903, considerably more than a year later, the trial judge sustained the exceptions numbered 1, 3, 4, 5, and 6, and by further order decreed the dismissal of the libel. From this decree, summarily disposing of the case without a hearing on the merits, this appeal is taken.

The libel, while subject to criticism, shows a maritime contract within the admiralty jurisdiction of the court, a breach thereof, and a right to damages. The proceedings were irregular, in allowing to be filed and in hearing exceptions to the libel presented on the part of any other than an intervening claimant.

The transcript is unnecessarily padded by including 82 pages of alleged testimony not submitted to or considered by the court.

The decree dismissing the libel is reversed, and the case is remanded, with instructions to strike from the files the exceptions filed on the 25th day of April, 1902, in the name of "libelee," and thereafter proceed according to admiralty rules and procedure. Neither party to recover costs on this appeal.